IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 08 2017

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

| | |
|---|---|
| MARIAN J. MENSIE, on behalf of herself and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOYOTA MOTOR CREDIT CORPORATION, | ) ) |
| Defendant. | ) ) |

Case No. 4:17-cv-85 - DPM

JURY TRIAL REQUESTED

This case assigned to District Judge _Marshall_
and to Magistrate Judge _Ray_

## COMPLAINT - CLASS ACTION

Plaintiff Marian J. Mensie, by and through the undersigned counsel, on her own behalf and as a representative of a class of persons similarly situated, for her causes of action against Defendant Toyota Motor Credit Corporation, states and alleges as follows:

### PARTIES

1.      Plaintiff Marian J. Mensie is, and at all times herein referenced was, an individual residing in Pulaski County, Arkansas.

2.      Defendant Toyota Motor Credit Corporation ("TMCC") is, and at all times herein referenced was, a California company registered to transact business within the State of Arkansas, transacting substantial business in Arkansas, with its principal place of business located at 19001 S. Western Ave., Torrance, California 90609, and available for service of process via The Corporation Company, 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72201.

3.      According to SEC filings, TMCC, is financial services firm with $114.7 billion in assets. It also purports to be one of the largest consumer finance companies in the United States.

### JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because:

a.      This is a civil action filed pursuant to Fed. R. Civ. P. 23 brought by one or more representative persons as a class action;

b.      The amount in controversy of all class members in the aggregate exceeds the sum or value of $5,000,000.00, exclusive of interest and costs;

c.      Many members of the putative class are citizens of States other than California, which is the State of TMCC's residence, and

d.      All other factual conditions precedent necessary to empower this Court with subject matter jurisdiction and personal jurisdiction have been satisfied.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, Plaintiff resides in this District, TMCC transacts a substantial amount of business in this District, and TMCC otherwise has sufficient contacts with this District to justify it being fairly brought into this District.

## FACTUAL ALLEGATIONS WITH RESPECT TO ALL COUNTS

6.      This class action arises from TMCC's systemic breach of its standard form contract related to "gap" protection for vehicle financing.

7.      TMCC provides financing to consumers so they can purchase vehicles from auto dealers, such as Toyota. TMCC is a lender.

8.      When a consumer purchases a vehicle from an auto dealer, the consumer and dealer enter into a retail installment contract ("RIC") that governs the financing arrangement for the vehicle, which the dealer then assigns to TMCC.

9.    RICs generally provide that the borrower will make periodic payments to the lender for a specified term, and also set forth the principal, interest rate, total amount financed and the various charges built into the financing plan.

10.    TMCC also offers vehicle purchasers the option to purchase "gap" protection in exchange for a specified payment.

11.    Gap protection has been generally described as a contract "designed to cover the difference between what your insurance carrier will pay and what you actually owe on the car if you have an accident and the car is totaled,"[1] or "the difference between what you owe on your car and what your car insurance company is willing to pay for it — without any maximum payout stipulation."[2]

12.    Like these general descriptions, TMCC describes gap protection as a product that, "will waive or pay the deficiency balance (minus certain fees and charges) between the amount still due on your finance or lease contract and your auto insurance settlement" if the customer experiences a total vehicle loss due to damage or theft.[3]

13.    According to TMCC, gap protection is designed to "help protect you from coming out of pocket to pay expenses you may face with a total loss."[4]

14.    Unlike true gap insurance policies sold by insurance companies, TMCC's gap protection comes in the form of a written standardized contract addendum to the RIC (hereinafter referred to as the "GAP Contract").

---

1 Webpage of the Arkansas Attorney General, available at: http://arkansasag.gov/programs/consumer-protection/my-vehicle/gap-insurance.
2 Webpage of Allstate Insurance, available at: http://www.esurance.com/insurance-coverages/gap-insurance.
3 *See* TMCC Guaranteed Auto Protection Brochure, a copy of which is attached hereto as Exhibit 1.
4 *See* TMCC's "Guaranteed Auto Protection" webpage, a copy of which is attached hereto as Exhibit 2, and is available at:

15.     Pursuant to the terms of the GAP Contract, TMCC agrees to waive a borrower's remaining liability to TMCC for any balance owed under the RIC that is over and above the Value of the Vehicle as determined by the physical damage insurance company.

16.     Pursuant to the terms of the GAP Contract, Ms. Mensie "will be responsible for any portion of a Deficiency Balance that results from the Amount Financed or Capitalized Cost that exceeded 150% of the Retail Value of the Vehicle."

17.     On June 28, 2014, Plaintiff Marian J. Mensie purchased a new Toyota RAV4 vehicle that was financed through TMCC for a total amount financed of approximately $41,900.00. A copy of Ms. Mensie's RIC with TMCC is attached hereto as Exhibit 3.

18.     In addition to the cost of the vehicle, Ms. Mensie also paid a separate and additional charge of $695.00 for a GAP Contract with TMCC. Ms. Mensie's GAP contract is attached hereto as Exhibit 4.

19.     On April 25, 2015, Ms. Mensie' vehicle was involved in an auto accident.  Her primary auto insurance carrier deemed Ms. Mensie's vehicle a total loss and paid TMCC, the lien holder for Ms. Mensie's vehicle, $24,431.45 as the value of Ms. Mensie's vehicle at the time of the accident.

20.     At that time, Ms. Mensie still owed TMCC approximately $38,100 for her vehicle under the RIC. TMCC refunded Ms. Mensie approximately $4,000 for the unused portion of a Mechanical Repair Agreement and a Prepaid Maintenance Agreement. Thus, there existed an approximate $10,000 "gap" between the $34,100 Ms. Mensie owed TMCC under her RIC and her "the actual cash settlement" from American Family in the amount of $24,431.45.

---

https://www.toyotafinancial.com/pub/w/planning_center/vehicle_protection_plans/guaranteed_auto_protection.

21.     Contrary to the terms of the GAP Contract, TMCC did not waive Ms. Mensie's liability for the $10,000 "gap." Instead, TMCC waived $7,997.48 and notified Ms. Mensie that she was liable to TMCC for the remaining $2,328.42 owed under the RIC. *See* Exhibit 5.

22.     TMCC's refusal to waive the full amount of the "gap" on Ms. Mensie's vehicle is contrary to the express terms of the GAP Contract.

23.     TMCC's refusal to waive the full amount of the "gap" on Ms. Mensie's vehicle has caused her pecuniary damage.

24.     Upon information and belief, TMCC's interpretation and construction of Ms. Mensie's GAP Contract is uniform and consistent with how TMCC has interpreted and construed all other GAP Contracts it sold to class members.

25.     The GAP Contract was drafted, prepared, promulgated and sold by TMCC and as such, any and all ambiguities in the GAP Contract must be construed against TMCC.

CLASS ACTION ALLEGATIONS

26.     Unless otherwise specifically stated herein, and pursuant to Fed.R.Civ.P. 23(b)(3), this action is instituted by Plaintiff on behalf of herself and all other persons that purchased an TMCC GAP Contract on or after July 1, 2009. Plaintiff also seeks a subclass of Arkansas persons that purchased a GAP Contract on or after July 1, 2009.

27.     Upon information and belief, the class referenced above includes thousands of putative class members residing throughout the United States and therefore, the class is so numerous that joinder of all members of the class would be impractical.

28.     The claims for relief asserted herein on behalf of Plaintiff and the putative class members present questions of law and fact common to the class, including:

5

a.   Whether TMCC breached its GAP Contract by virtue of the manner in which it waived, and refused to fully waive, borrower liability in situations involving a total loss;

b.   Whether TMCC breached the duty of good faith and fair dealing implied within the TMCC GAP Contract by virtue of the manner in which it waived, and refused to fully waive, borrower liability in situations involving a total loss;

c.   Whether TMCC violated the Arkansas Deceptive Trade Practices Act (ADTPA) by virtue of the manner in which it waived, and refused to fully waive, borrower liability in situations involving a total loss;

d.   Whether TMCC's acts and omissions have caused damage to Plaintiff and the class, and

e.   Whether injunctive relief is warranted to prevent TMCC from causing future harm.

29.     The claims of Plaintiff are typical of the claims of the putative class and the putative subclass in that:

a.   Plaintiff and the putative class members entered into the exact same standardized, written, form GAP Contract, which contained the same or substantially similar terms and conditions, and which was prepared solely by TMCC;

b.   TMCC's interpretation and construction of its GAP Contract is consistent among Plaintiff and all putative class members; and

c.   The facts common to Plaintiff and the putative class members give rise to the same claims asserted in this Complaint, including but not limited to the fact that TMCC

refuses to fully waive borrower liability for the "gap" in situations involving a total loss.

30.     Plaintiff, as a representative for the putative class, will fairly and adequately protect the interests of the putative class because:

    a.  Plaintiff has knowledge regarding the facts and circumstances that give rise to her claims and the claims of the putative class members;

    b.  Plaintiff is strongly interested and highly motivated to assert and protect her own rights and the rights of the putative class in a vigorous fashion; and

    c.  Plaintiff has retained class counsel with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources.  These law firms will vigorously assert and protect the interests of the putative class members.

31.     The questions of law and/or fact common to Plaintiff and the putative class members predominate over any questions affecting only individual members of the class, and a class action as asserted herein is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

    a.  The interests of Plaintiff and the interests of individual class members in controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action;

    b.  Upon information and belief, there are no pending certified class actions concerning the controversy at issue or the claims asserted in this case applicable to Plaintiff, or the putative class members set forth herein;

7

   c.  Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the location of Plaintiff, the nationwide spread of putative class members, the fact that TMCC does substantial business in this jurisdiction, and the availability of witnesses and evidence; and

   d.  Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of Plaintiff and the putative class members.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

Plaintiff Marian J. Mensie, for Count I of this Complaint, states and alleges as follows:

32.    To the extent they are not inconsistent, Plaintiff incorporates by reference the allegations set forth above as if more fully set forth herein.

33.    Pursuant to the express terms of the GAP Contracts held by Plaintiff and the class members, TMCC was required to waive a borrower's liability for the "gap" between the amount owed under an RIC and the actual cash settlement received from the borrower's primary auto insurance company in situations involving a total loss.

34.    Plaintiff and the class members agreed to, and did, pay a premium for their GAP Contracts.

35.    Plaintiffs and the class members fully performed their obligations under the GAP Contracts.

36.     TMCC failed to perform and materially breached the GAP Contracts of Plaintiff and the class members by not waiving the "gap" between the amount owed under an RIC and the actual cash settlement received from the primary auto insurance company, in situations involving a total loss.

37.     As a direct and proximate result of TMCC's breach of the GAP Contracts of Plaintiff and the class members, Plaintiff and the class members have suffered pecuniary damages.

COUNT II
ARKANSAS DECEPTIVE TRADE PRACTICES ACT

Plaintiff Marian J. Mensie, for Count II of this Complaint, states and alleges as follows:

38.     To the extent they are not inconsistent, Plaintiff incorporates by reference the allegations set forth above as if more fully set forth herein.

39.     The Arkansas Deceptive Trade Practices Act, §4-88-101, *et seq.*, was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair practices.

40.     Section 4-88-107, Ark. Code Ann. provides in relevant part: "(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Section 4-88-108, Ark. Code Ann. Provides: "When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or

9

(2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."

41.     The acts and practices engaged in by TMCC, as set forth herein, constitute unfair, deceptive and/or fraudulent business practices in violation of Chapter 4-88-101, *et. seq.*, Ark. Code Ann.

42.     In refusing to waive the "gap" between the amount owed under an RIC and the actual cash settlement received from the primary auto insurance company, TMCC employed deception, fraud, false pretenses, false promises, misrepresentations, unfair practices and omitted, concealed and suppressed material information and failed to inform Plaintiff and the class members of material facts in violation of Sections 4-88-107 and 108, Ark. Code Ann.

43.     TMCC's unfair and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

44.     The aforesaid violations of the Arkansas Deceptive Trade Practices Act have caused Plaintiffs and the class members a substantial and ascertainable loss of money and/or property and other damages.

45.     TMCC's conduct was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the class members and, therefore, warrants the imposition of punitive damages and/or penalties.

46.     Plaintiff has been forced to hire attorneys to enforce her rights under the Arkansas Deceptive Trade Practices Act, and an award of attorney fees is warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,

_____
Michael B. Phillips        AR # 06255
Brandon K. Moffitt        AR # 06148
MOFFITT & PHILLIPS, PLLC
204 Executive Court, Suite 100
Little Rock, AR 72205
Telephone: (501) 255-7406
Fax: (866) 460-5744
mphillips@moffittandphillips.com
bmoffitt@moffittandphillips.com


Robert A. Horn              MO # 28176
Joseph A. Kronawitter       MO # 49280
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Telephone: (816) 421-0700
Fax: (816) 421-0899
rhorn@hab-law.com
jkronawitter@hab-law.com


LAW OFFICES OF BRIAN TIMOTHY MEYERS
Brian Timothy Meyers        MO # 32636
Brian C. McCart             MO # 61852
1125 Grand Blvd., Suite 1610
Kansas City, MO  64106
Telephone: (816) 842-0006
Fax: (816) 842-6623
btmeyers@btm-law.com
bmccart@btm-law.com


Attorneys for Plaintiffs

11





# Guaranteed Auto Protection
Payment Protection Plan



Backed by the Strength and Stability of Toyota

## Filling the Gap



Guaranteed Auto Protection (GAP) will waive or pay the deficiency balance (minus certain fees and charges) between the amount still due on your finance or lease contract and your auto insurance settlement.[1] In most states, GAP will cover your auto insurance deductible.[2]

### How GAP Works

| | |
|---|---|
| Finance or Lease Contract Balance | $23,000 |
| Auto Insurance Settlement | -$20,000 |
| | $3,000 |
| Auto Insurance Deductible | +$1,000 |
| | |
| Deficiency Balance | $4,000 |
| GAP Payment [1] | -$4,000 |
| Total Owed to Financial Institution to Pay Off Finance or Lease Contract | $0 |

(For illustrative purposes only. Individual experiences may vary.)

## What Your Auto Insurance May Pay

You might assume that your physical damage auto insurance is sufficient to cover any losses related to your vehicle.

However, when a vehicle is declared a total loss, the primary auto insurance settlement is generally based on the market value of the vehicle, which may be substantially less than the balance still owed on your finance or lease contract for the vehicle. This difference is called the deficiency balance, which the vehicle owner is generally responsible for.

### Ask Your Dealer Now

Ask your dealer about GAP (offered by TFS) now because it's only available from your dealer at the time you purchase or lease an eligible new or used vehicle. And, for your convenience, the cost of GAP can be added to your finance or lease contract and included as a portion of your monthly payments (subject to credit approval).[3] GAP is available in most states.

Auto Insurance Settlement before deductible is applied (if applicable).

GAP pays up to $1,000 of your auto insurance deductible[2]

If a total loss occurs without GAP, you are generally responsible for this amount to pay off your finance or lease contract.

1. Less any delinquent payments, taxes, and past due charges. See agreement, certificate, or waiver for complete details. Some restrictions apply.
2. Available in most states if it is purchased and disclosed separately on the finance/lease contract.
3. Not all customers will qualify.



To learn more about the wide range of programs offered by Toyota Financial Services and your participating Toyota dealer, please visit us at **toyotafinancial.com.**

**The purchase of a Guaranteed Auto Protection plan is optional, cancellable (see GAP agreement, certificate, or waiver) and not required to obtain credit.**

This brochure is intended as an outline for the Guaranteed Auto Protection program offered by Toyota Financial Services. For exact provisions, exclusions, and limitations, please consult your actual agreement, certificate, or waiver. The Guaranteed Auto Protection Program may be a Debt Cancellation Agreement, a waiver by a lender/lessor, or insurance in some states.

The information in the claim example is for illustrative purposes only. The actual GAP payment in relation to the value of a particular vehicle may vary. Type and availability of GAP vary by state and may not be available in all states.

Toyota Financial Services
P.O. Box 9550
Cedar Rapids, IA 52409

©2015 Toyota Financial Services. Toyota Financial Services is a service mark used by Toyota Motor Credit Corporation (TMCC) and Toyota Motor Insurance Services, Inc. and its subsidiaries. TMCC is the authorized attorney-in-fact and servicer for Toyota Lease Trust.                00501 · 17-018 (4/16)



toyotafinancial.com



**TOYOTA**
**FINANCIAL SERVICES**
(/pub/home)

| MANAGE ACCOUNT (/PUB/W/RESOURCE_CENTER) | Search | Toyota Websites | About Us | Relations |

EXPLORE FINANCING (/PUB/W/PLANNING_CENTER) | Planning Center ((/pub/w/planning_center) | Buy a Toyota (http://www.buyatoyota.com/) | (http://www.toyota.com/pub/w/about | Credit Application (/pub/w/apply_for | investor_relatio

EXHIBIT 2

PENGAD 800-631-6989

PLANNING CENTER
(/PUB/W/PLANNING_CENTER)

Financing Options
(/pub/w/planning_center/fi

Toyota Quality Protection
(/pub/w/planning_center/v

Vehicle Service
Agreements
(/pub/w/planning_center/

**Guaranteed Auto
Protection (GAP)
(/pub/w/planning_cen**

Prepaid Maintenance
Plans
(/pub/w/planning_center/

Tire & Wheel Protection
(/pub/w/planning_center/

Excess Wear & Use
Protection
(/pub/w/planning_center/

Understanding Credit
(/pub/w/planning_center/u

Toyota Rewards Visa®
(/pub/w/planning_center/to

Business Owners
(/pub/w/planning_center/b

Glossary
(/pub/w/planning_center/gl

RESOURCE CENTER
(/PUB/W/RESOURCE_CENTER)

ANNOUNCEMENT
(HTTP://WWW.TOYOTAFINANCIAL.COM/PUB/STATIC/ALERT/TFS-
ALERTS.HTML)

LOCAL SPECIALS
(HTTP://WWW.TOYOTA.COM/LOCAL-
SPECIALS/)

# Guaranteed
# Auto Protection

### GAP keeps you covered.

Whether you are leasing or financing, GAP can help protect you from coming out of pocket to pay expenses you may face with a total loss.[1]



**Total Loss Protection**

If you have an incident where your car is declared totaled and you still owe more on your finance or lease contract, GAP may lessen or even eliminate your remaining balance.[2]

**More Than Just Accident Coverage**

GAP provides coverage if your vehicle is declared a total loss due to incidents such as theft, fire, or an accident.

**More Features**

GAP will cover up to $1,000 of your auto insurance deductible (if applicable) in most states.[3]

**Plan Availability**

### Available only at time of financing.

GAP is only available in the dealership when you purchase or lease your vehicle.

Note: GAP is optional, cancellable (see terms of Agreement) and not required to obtain credit.

[1] Less any delinquent payments, taxes, auto insurance deductibles over $1000, if applicable, and past-due charges. See agreement, certificate, or waiver for complete details. Some restrictions may apply.

[2] Type and availability of GAP vary by state. GAP may not be available on finance and lease contracts in some states. Please discuss with your dealer and refer to your agreement at time of purchase.

[3] GAP typically waives or pays the deficiency balance (minus certain fees and charges) between the amount still due on your finance or lease contract and your auto insurance settlement at the time of total loss.

**Brochure**

**(http://www.sc.toyotafinancial.com/web/tfs/pub/contents/pc/TFS_GAP_Digital_Brochure.pdf)**

### How it works

**Qualifying Criteria[4]**
Available only at the time of vehicle lease or purchase.
GAP must be the same term as the finance or lease contract, up to the maximum term available.

**Limits**
Limits apply. Please refer to your GAP agreement for details upon purchase.

**Transferability**
Only transferable with the reassignment of the original finance or lease contract. The new owner will take over your original finance or lease contract.

**Cancellation**
You can cancel your GAP within 30 days of purchase for a full refund. Unless a claim has been submitted, or unless otherwise required by state law. For beyond 30 day cancellations or state specifications, please ask your dealer or refer to your agreement upon purchase. You cannot reinstate your GAP after cancellation.

| **Next Steps**

For more info, visit your local Toyota dealer.
(http://www.toyota.com/dealers/)
For some shopping tips, check out our Dealer Visit Checklist.

<sup>4</sup> Coverage is subject to exclusions and limitations set forth in the Agreement.

**Find Dealer**

(http://www.toyota.com/dealers/)

Note: The benefits stated here are subject to change or may vary slightly based upon the purchase date of the Agreement.

**Dealer Visit Checklist**

(http://www.sc.toyotafinancial.com/web/tfs/pub/contents/insurance/shopping_checklist_general.pdf)
Ready to Purchase?

Ready to file a claim?

| **Apply for credit online** | **Which Toyota fits my budget?** | **Vehicle Service Agreements** |
|---|---|---|
|  |  |  |
| It's never been easier to fill out our online application. | We make it easy to see which Toyotas fit your finances. | Make taking care of your vehicle simple |
| **Go** | **Go** | |
| **(/pub/w/apply_for_credit)** | **(/pub/w/reverse_estimator)** | **(/pub/w/planning_center/vehicle_p** |

Contact Us (/pub/w/customer_service/contact_us)   Sitemap (/pub/w/sitemap)   Glossary (/pub/w/planning_center/glossary)   FAQs (/pub/w/faqs)

TRUSTe
CERTIFIED PRIVACY   (http://privacy.truste.com/privacy-seal/Toyota-Financial-Services/validation?rid=9df91dc9-9d76-4c68-bd5f-76f5e1b1a713)

**RETAIL INSTALLMENT CONTRACT — SIMPLE INTEREST**

TOYOTA

FINAL

**EXHIBIT 3**

Dealer Number: 3072  Account Number:

| Buyer (and Co-Buyer) – Name(s) and Address(es) (include County and Zip Code) | Creditor (Seller) – Name and Business Address |
|---|---|
| MARIAN J MENSIE<br>703 WEST 16TH<br>NORTH LITTLE ROCK<br>AR 72114 PULASKI | LANDERS TOYOTA<br>10825 COLONEL GLENN RD<br>LITTLE ROCK AR 72204 |

**Meaning of Words.** In this contract, the words "you," "your" and "yours" refer to the Buyer and Co-Buyer, if any. The word "Creditor" refers to the Creditor (Seller) named above and, after assignment to Toyota Motor Credit Corporation ("TMCC") and any subsequent assignee.

**Who is Bound.** You may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price". The credit price is shown below as "Total Sale Price". By signing this contract, you choose to buy the vehicle on credit under the terms on the front and back of this contract and you are individually liable to the Creditor for any amount due.

**Description of Vehicle.** You agree to buy and the Creditor agrees to sell the following vehicle:

| New, Used or Demo | Year | Make | Model | Body Type | Vehicle Identification No. | Odometer Miles | Primary Purpose |
|---|---|---|---|---|---|---|---|
| NEW | 2014 | TOYOTA | RAV4 | 4DR FWD XL | 2T3WFREV1EW102895 | | ☒ Personal, Family or Household<br>☐ Business or Commercial<br>☐ Agricultural |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down-payment of $ 0.00 |
|---|---|---|---|---|
| 4.35 % | $ 6779.54 | $ 41911.90 | $ 48691.44 | $ 48691.44 |

**Your Payment Schedule Will Be:**

| Number of Payments: | Amount of Each Payment: | When Payments Are Due: |
|---|---|---|
| One deferred downpayment of | N/A | N/A |
| 83  regular payments of | 579.66 | Monthly, beginning 07/28/2014 |
| One final payment of | 579.66 | FINAL PAYMENT DUE ON 05/28/202_ |

**Late Charge.** If a payment is not paid in full within 10 days after it is due, you agree to pay a late charge of 5% of the unpaid amount of the late payment or $10.00, whichever is less.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security.** You are giving a security interest in the vehicle being purchased.

**Other Terms.** Please read this contract, including the reverse side, for additional information about security interests, nonpayment, default, penalties and any required repayment in full before the scheduled date.

**ITEMIZATION OF THE AMOUNT FINANCED**

| | | | |
|---|---|---|---|
| 1 | Cash Price (including any accessories, services and taxes) | | $ 26559.90 (1) |
| 2 | Downpayment | | |
| | A Trade-in Vehicle 2011 HONDA PILOT | | |
| |    Year      Make      Model | | |
| |   Gross Trade-in Value | $ 17500.00 | |
| | B Payoff of Existing Lien or Lease Balance on Trade-in Vehicle | $ 27200.00 | |
| | C Net Trade-in Value (A - B) (indicate if negative number) | ($ 9700.00) | |
| | D Remaining Cash Downpayment (including Deferred Downpayment of $ N/A payable before the due date of the<br>first regularly scheduled payment) | $ N/A | |
| | E Rebates and Non-Cash Incentives | $ N/A | |
| | F Subtotal (C + D + E) | ($ 9700.00) | |
| | G TOTAL DOWNPAYMENT (if Subtotal is negative, Total Downpayment is $0.00) | | $ 0.00 (2) |
| 3 | Unpaid Balance of Cash Price (1 minus 2) | | $ 26559.90 (3) |
| 4 | Other Charges and Amounts Paid to Others on Your Behalf: Seller may retain, or receive a portion of these amounts. | | |
| | A Cost of Required Physical Damage Insurance Paid to the Insurance Company Named Below – Covering<br>Damage to the Vehicle | $ N/A | |
| | B Cost of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below<br>Life $ N/A    Disability, Accident and Health $ N/A | $ N/A | |
| | C Cost of Optional Mechanical Breakdown Protection Paid to the MBP Company Named Below – Covering<br>Certain Mechanical Repairs | $ 2830.00 | |
| | D Cost of Optional Guaranteed Auto Protection Paid to the GAP Company Named Below | $ 695.00 | |
| | E Official Fees Paid to Public Officials | $ N/A | |
| | F Taxes Paid to Government Agencies (Not Included in Cash Price) | $ N/A | |
| | G Government License Fees | $ N/A | |
| | H Government Registration Fees | $ N/A | |
| | I Government Certificate of Title Fees | $ N/A | |
| | J SERVICE AND HANDLING FEE | $ 129.00 | |

    A SERVICE AND HANDLING FEE IS NOT AN OFFICIAL FEE. A SERVICE AND HANDLING FEE IS NOT REQUIRED BY LAW BUT MAY BE CHARGED TO THE CUSTOMER FOR PERFORMING SERVICES AND HANDLING DOCUMENTS RELATING TO THE CLOSING OF A SALE OR LEASE. THE SERVICE AND HANDLING FEE MAY RESULT IN PROFIT TO THE DEALER. THE SERVICE AND HANDLING FEE DOES NOT INCLUDE PAYMENT FOR THE PREPARATION OF LEGAL DOCUMENTS. THIS NOTICE IS REQUIRED BY LAW.

| | | | |
|---|---|---|---|
| | K Other Charges (Creditor must identify who will receive payment and describe purpose) | | |
| | To             for PRIOR BALANCE | $ 9700.00 | |
| | To THE MECHANIC   for MAINTENANCE | $ 1998.00 | |
| | To N/A         for N/A | $ N/A | |
| | To N/A         for N/A | $ N/A | |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 15352.00 (4) |
| 5 | Amount Financed – Unpaid Balance (3+4) | | $ 41911.90 (5) |

**Required Physical Damage Insurance.** Physical damage insurance is required, but you may provide the required insurance coverage through an existing policy of insurance owned or controlled by you or through anyone you want which is reasonably acceptable to the Creditor. If you buy it through the Creditor and are accepted by the insurance company, the policies or certificates issued by the insurance company will describe the terms and conditions. The cost of this insurance is shown in 4A of the Itemization above.

Insurance Company N/A            Term N/A months

☐ $ N/A Deductible Collision and either:
☐ $ N/A Deductible Comprehensive including Fire, Theft and Combined Additional Coverage
☐ Fire, Theft, and Combined Additional Coverage

Optional, if desired – ☐ Towing and Labor Costs    ☐ Rental Reimbursement    ☐ CB Radio Equipment

**Optional Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost, which is shown below and in 4B of the Itemization above.

**Optional Credit Insurance. Credit life insurance and credit disability insurance are not required to obtain credit** and will not be provided unless you sign and agree to pay the additional cost, which is shown below and in 4B of the Itemization above.

| Type | Premium | | | Term (months) | Signature | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Credit Life | ☐ Single Coverage $ | | N/A | | I want the specified credit life coverage. | N/A | N/A | | N/A | N/A | |
| | ☐ Joint Coverage $ | | N/A | N/A | | Buyer Signature | Date | | Co-Buyer Signature | | Date |
| Credit Disability | Single Coverage (Buyer Only) $ | | N/A | N/A | I want the specified credit disability coverage. | N/A | N/A | | N/A | N/A | |
| | | | | | | Buyer Signature | Date | | Co-Buyer Signature | | Date |

If you elect optional credit insurance coverage and are accepted by the insurance company, the terms and conditions will be as described in the policies or certificates issued by the insurance company. The original amount of the decreasing term credit life insurance will not exceed $ _____ N/A _____ . Credit disability insurance payments will equal the monthly payment amount but will not be more than $ _____ N/A _____ . Insurance Company N/A

## THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**Optional Mechanical Breakdown Protection. Mechanical breakdown protection is not required to obtain credit and you may purchase it from anyone you want** who is reasonably acceptable to the Creditor. You may purchase mechanical breakdown protection under this contract by signing below and agreeing to pay the additional cost, which is shown in 4C of the Itemization above.

The term of this protection will be _____ 84 _____ months from the date of delivery or until the odometer of the vehicle shows _____ 100000 _____ miles, whichever occurs first. If you purchase this protection, you have reviewed the terms of the contract which describes this protection and you understand that a copy of the completed contract will be sent to you as soon as practicable.

MBP Company THE MECHANIC $ 100.00 Deductible
**I (WE) WANT THE OPTIONAL MECHANICAL BREAKDOWN PROTECTION FOR WHICH THE COST IS INCLUDED ABOVE.**

| _(signature)_ | 06/28/2014 | N/A | N/A |
|---|---|---|---|
| Buyer Signature | Date | Co-Buyer Signature | Date |

**Optional Debt Cancellation Agreement or Guaranteed Auto Protection ("GAP") Coverage:** GAP coverage is not required to obtain credit. It will not be provided unless you sign and agree to pay the additional cost, which is shown in 4D of the Itemization above. If you elect the optional GAP coverage and are accepted by the GAP provider, the terms and conditions will be described in the GAP agreement issued by the provider.

GAP Provider RESOURCE
**I (WE) WANT THE OPTIONAL GAP COVERAGE FOR WHICH THE COST IS INCLUDED ABOVE.**

| _(signature)_ | 06/28/2014 | N/A | N/A |
|---|---|---|---|
| Buyer Signature | Date | Co-Buyer Signature | Date |

## *THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIATED WITH THE DEALER. THE DEALER MAY ASSIGN THIS CONTRACT AND RETAIN ITS RIGHT TO RECEIVE A PART OF THE FINANCE CHARGE.*

**Receipt of Goods and Promise to Pay.** You agree that you have received the vehicle and/or services described above, and have accepted delivery of the vehicle in good condition. You promise to pay to the Creditor the Total Sale Price shown above by making the Total Downpayment and paying the Creditor the Total of Payments in accordance with the Payment Schedule shown above and all other amounts due under this contract.

## IMPORTANT: THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE PART OF THIS CONTRACT. READ THESE TERMS AND CONDITIONS BEFORE SIGNING BELOW.

**You signed this contract and received a completely filled-in copy on** _____ JUNE 28th _____ , Year 2014 .

| _(signature)_ | N/A |
|---|---|
| Signature of Buyer | Signature of Co-Buyer |

Accepted ANDERS TOYOTA By _____
Creditor | Signature and Title

| This contract is assigned to TMCC subject to repurchase under the terms of the "Seller's Assignment" on the reverse side. | | | | This contract is assigned to TMCC without recourse or with limited recourse under the terms of the "Seller's Assignment" on the reverse side. | | | |
|---|---|---|---|---|---|---|---|
| N/A | N/A | | | ANDERS TOYOTA | | | |
| Seller | By | (If Corp. or Partnership) | (Title) | Seller | By | (If Corp. or Partnership) | (Title) |

ARKANSAS (For use in the State of Arkansas)

DISTRIBUTION: WHITE – TMCC COPY; GREEN – STATE COPY; CANARY – SELLER COPY; PINK – 2 BUYER'S COPIES
3103AR 06/14

**OTHER IMPORTANT AGREEMENTS**

**Payments Before or After Scheduled Due Date.** This is a simple interest contract. This means that the amount of the Finance Charge may vary. The Finance Charge and Total of Payments shown on the front of the contract are based on the assumption that all payments are made when due. The Creditor credits each payment first to accrued Finance Charge, then to the unpaid balance of the Amount Financed and the remainder to unpaid charges. The Creditor computes your Finance Charge each day on the unpaid balance of the Amount Financed. The earlier you make payments before their due dates, the less Finance Charge you will owe. The Creditor will send you a check for any amount owed to you after your last payment. The later you make payments after they are due, the greater the Finance Charge. The Creditor will advise you of any additional amount you owe at the end of the contract term. You understand that payment of any installment after it is due will be a default on your part as stated below.

**Ownership, Location and Risk of Loss.** You agree to pay the Creditor all you owe under this contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, rent, lease or remove the vehicle from the state in which you reside on the date of this contract without the prior written permission of the Creditor. The vehicle will be kept at the address you specify in this contract unless another address is provided to the Creditor in writing. You will notify the Creditor in writing of any change in your address where the vehicle is regularly located. Under no circumstances will you be permitted to remove the vehicle from the United States, except to Canada and then only for a period of 30 days or less. You agree to keep the vehicle property maintained. You agree not to expose the vehicle to misuse or confiscation. You will make sure the Creditor's security interest (lien) on the vehicle is shown on the title.

**Taxes and Other Charges.** You are responsible for and will pay when due all taxes, repair bills, storage bills, fines, assessments and other charges in connection with the vehicle. If you fail to pay these amounts the Creditor may do so for you. If the Creditor does so, you agree to repay the amount when the Creditor asks for it. You agree to comply with all registration, licensing, tax and title laws applicable to the vehicle.

**Security Interest.** You hereby grant the Creditor a security interest in: (1) the vehicle being purchased, and accessories and equipment then installed in the vehicle, any accessions installed in or affixed to the vehicle and any replacement parts installed in the vehicle; (2) insurance premiums, and charges for mechanical breakdown protection and guaranteed auto protection contracts returned to the Creditor; (3) proceeds of any insurance policies, mechanical breakdown protection or guaranteed auto protection contracts on the vehicle; and (4) proceeds of any insurance policies on your life or health which are financed in this contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension, refinancing or assignment of this contract. It also secures your other agreements in this contract.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The physical damage insurance must name the Creditor as loss payee and must require 10 days advance written notice to the Creditor before any cancellation or reduction in the insurance coverage. You agree to deliver promptly to the Creditor whatever written proof of insurance coverage the Creditor may reasonably request. At any time during the term of this contract, if you do not have physical damage insurance which covers both the interest of you and the Creditor in the vehicle, then the Creditor may buy it for you. If the Creditor does not buy physical damage insurance which covers both interests in the vehicle, it may, if it decides, buy insurance which covers only the Creditor's interest.

The Creditor is under no obligation to buy any insurance, but may do so if it desires. If the Creditor buys either of these coverages, it will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a finance charge at the Annual Percentage Rate applicable to this contract or, if that rate is not authorized, the highest lawful contract rate. You agree to pay the charge in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that the Creditor can use any insurance settlement either to repair the vehicle or to apply to your debt.

**Late Charge.** If any payment is not paid in full within 10 days after it is due, you agree to pay a late charge of 5% of the unpaid amount of the late payment or $10.00, whichever is less. Acceptance of a late payment or late charge does not excuse your late payment or mean that you can keep making payments after they are due. The Creditor may also take the steps set forth below if there is any late payment.

**Insurance or Optional Contracts.** This contract may contain charges for insurance, mechanical breakdown protection or guaranteed auto protection contracts. If you default under this contract, you agree that the Creditor may claim benefits under these contracts and terminate them to obtain refunds for unearned charges. You agree to cooperate with the Creditor in collecting any proceeds or cancellation refunds, including executing all necessary papers.

**Insurance or Optional Contract Charges Returned to Creditor.** If any charge for required insurance is returned to the Creditor, it may be credited to your account or used to buy similar insurance or insurance which covers only the Creditor's interest in the vehicle. Any refund on optional insurance, mechanical breakdown protection or guaranteed auto protection contracts obtained by the Creditor will be credited to your account. Credits to your account will include both the amounts received by the Creditor and the unearned finance charge on those amounts. These credits will be applied to as many of your installments as they will cover.

**Default and Required Repayment in Full Before the Scheduled Date.** You will be in default under this contract if you fail to pay any payment according to the payment schedule; if bankruptcy or insolvency proceedings are initiated by or against you; if any person tries to take any of your property by legal proceedings while it is in your possession or control; or if you break any of the agreements in this contract. If you are in default, the Creditor can accelerate the payments under this contract and demand that you pay all that you owe at once. The Creditor may also take the steps set forth below if you default under this contract.

**Repossession of the Vehicle for Failure to Pay.** If you default under this contract, the Creditor can take the vehicle from you (repossession). To take the vehicle the Creditor can enter your property, or the property where it is stored, so long as it is done peacefully and lawfully. If there is any personal property in the vehicle, such as clothing, the Creditor can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

**Getting the Vehicle Back After Repossession.** If the Creditor repossesses the vehicle, you have the right to get it back (redeem) by paying the entire amount you owe on the contract (not just past due payments) plus any late charges, the cost of taking and storing the vehicle and other expenses that the Creditor or assignee has had. Your right to redeem will end when the vehicle is sold or when the Creditor enters into a contract for its disposition, whichever occurs first.

**Sale of the Repossessed Vehicle.** The Creditor will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, the Creditor can sell it. The Creditor will use the net proceeds of the sale to pay all or part of your debt.

To the extent permitted by law, the net proceeds of sale will be figured this way: Any late charges and any charges for taking, storing, cleaning, advertising, leasing and/or selling the vehicle will be subtracted from the selling price.

If you owe the Creditor less than the net proceeds of sale, the difference is owed you, unless the Creditor is required to pay it to someone else. For example, the Creditor may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, you agree to pay the difference between the net proceeds of sale and what you owe when the Creditor asks for it. If you do not pay this amount when asked, you may also be charged interest at the Annual Percentage Rate applicable to this contract, not to exceed the highest lawful rate, until you do pay all you owe.

**Collection Costs.** To the extent permitted by applicable law, you agree to reimburse the Creditor for all out-of-pocket collection expenses and reasonable attorneys' fees. These expenses include, but are not limited to, costs of investigation and prerepossession expenses. You also agree to pay the Creditor a check collection charge, as authorized by law, plus the amount charged by the financial institution for each check, draft or other form of payment which is returned or dishonored for any reason.

**Credit Information.** You hereby authorize the Creditor to investigate your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of your account and to furnish information concerning your account, including insurance information, to credit reporting agencies and others who may lawfully receive such information.

**Interest after Maturity.** If there is a balance due when this contract matures, you agree to pay interest at the Annual Percentage Rate applicable to this contract, or if that rate is not authorized, the highest lawful rate.

**Delay in Enforcing Rights and Changes in this Contract.** The Creditor can delay or refrain from enforcing any of its rights under this contract without losing them. For example, the Creditor can extend the time for making some payments without extending others. Any change in the terms of this contract must be in writing and signed by the Creditor. No oral changes are binding. If any part of this contract is not valid, all other parts will remain enforceable.

**Warranties Seller Disclaims.** You understand that the Seller is not offering any express warranties unless: (i) the seller extends a written warranty; or (ii) the window form for a used or demonstration vehicle indicates that the Seller is giving express warranties.

**In addition, there are no implied warranties of merchantability or fitness for a particular purpose or any other implied warranties by the Seller covering the vehicle unless: (i) the Seller extends a written warranty; (ii) within 90 days from the date of this contract, you enter into a service contract with the Seller which applies to the motor vehicle being purchased; or (iii) the window form for a used or demonstration vehicle states that the Seller is giving implied warranties. To the extent permitted by applicable law, the Seller shall have no responsibility to you or to any other person with respect to any interruption of service, loss of business or anticipated profit or consequential damages.**

An implied warranty of merchantability generally means that the vehicle is fit for the ordinary purpose for which such vehicles are generally used. A warranty of fitness for a particular purpose is a warranty that may arise when the Seller has reason to know the particular purpose for which you require the vehicle and you rely on the Seller's skill or judgment to furnish a suitable vehicle.

This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**Governing Law.** This contract will be governed by the laws of the State of Arkansas.

**Used and Demonstration Car Buyer's Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in this contract of sale. The preceding NOTICE applies only to a used or demonstration vehicle sale.

**Guía Para Compradores de Vehículos Usados o Demostraciones. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto todas las disposiciones en contrario contenida en el contrato de venta. El AVISO anterior se aplica solamente a la venta de vehículo usado o demostración.**

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, you will not assert against any subsequent holder or assignee of this contract any claims or defenses you (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.**

---

**SELLER'S ASSIGNMENT**

Seller sells and assigns to Toyota Motor Credit Corporation ("TMCC") all of its right, title and interest in this contract.

In addition to the Seller's Warranties and Representations in the Retail Sales Financing

Seller agrees to indemnify TMCC for any judicial setoff or loss suffered as a result of a claim or defense of Buyer against Seller.

If this contract is rescinded, cancelled, voided or otherwise made unenforceable, Seller shall pay TMCC the full amount TMCC paid to purchase it.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, you will not assert against any subsequent holder or assignee of this contract any claims or defenses you (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**SELLER'S ASSIGNMENT**

Seller sells and assigns to Toyota Motor Credit Corporation ("TMCC") all of its right, title and interest in this contract.

In addition to the Seller's Warranties and Representations in the Retail Sales Financing Agreement ("Master Agreement"), Seller warrants and represents that: (1) The contract arose from the retail sale of the property described on the face of the contract; (2) Seller had title to the property at the time of sale free of any liens; (3) All disclosures required by law were properly made to the Buyer prior to the Buyer signing the contract; (4) All insurance disclosures made by Seller are complete, accurate and properly made in accordance with applicable law; (5) All insurance documentation will be delivered to the Buyer within the time required by law; (6) To the best of Seller's knowledge, the Customer Statement is accurate; (7) The downpayment received by Seller is exactly as stated; (8) The contract is enforceable; (9) Seller is licensed as required by law; (10) Seller has fully complied with all consumer protection, insurance and other laws and regulations applicable to the sale of or any item contained in this contract; (11) Any optional mechanical breakdown protection sold under this contract is offered for sale in connection with comparable cash transactions at a price equal to that disclosed on the face of the contract; (12) Seller has complied with all applicable requirements of the FTC Used Motor Vehicle Trade Regulation Rule; and (13) The deferred down payment, if any, is disclosed on the front side of this contract, is payable before the due date of the first regularly scheduled payment and is not subject to a finance charge.

Each of these warranties and representations is material to TMCC's acceptance of this contract. If any of them is breached or is erroneous, Seller unconditionally promises to accept reassignment of this contract and to pay TMCC, upon demand, the full amount of the unpaid balance under this contract. Seller also agrees to indemnify TMCC to the full extent of all losses or expenses incurred by TMCC as a result of such breach or error.

Seller agrees to indemnify TMCC for any judicial setoff or loss suffered as a result of a claim or defense of Buyer against Seller.

If this contract is rescinded, cancelled, voided or otherwise made unenforceable, Seller shall pay TMCC the full amount TMCC paid to purchase it.

Seller shall be liable even if a waiver, compromise, settlement or variation of the terms of the contract releases the Buyer.

Seller waives notice of acceptance of this guarantee and notices of non-payment and non-performance.

**CONTRACTS ASSIGNED SUBJECT TO REPURCHASE**

If this contract is assigned subject to repurchase, in addition to the foregoing guarantees, indemnities and obligations, Seller unconditionally guarantees to repurchase this contract in the event of a default and pay all losses and expenses incurred by TMCC as provided by the terms of the Master Agreement.

**CONTRACTS ASSIGNED WITHOUT RECOURSE OR WITH LIMITED RECOURSE**

If this contract is assigned without recourse or with limited recourse, such assignment is without recourse to the Seller except in the circumstances set forth above and in the Master Agreement and in and to the extent that an amount is stated in the following paragraph.

Seller unconditionally guarantees that if Buyer defaults in the payment of any installment under this contract, Seller will pay, upon demand by TMCC, the unpaid balance up

to the sum of $_____

3103AR 06/14

**EXHIBIT**
**4**

## OPTIONAL GUARANTEED ASSET PROTECTION (GAP)                    CONTRACT AMENDMENT

THIS IS AN AMENDMENT TO THE RETAIL INSTALLMENT SALES CONTRACT OR LEASE CONTRACT (REFERRED TO AS THE "CONTRACT") BETWEEN THE DEALER AND **YOU**, THE CUSTOMER, LISTED BELOW AND COVERS ONLY THE ORIGINAL CONTRACT FOR THE PURCHASE/LEASE OF THE **VEHICLE**.

### AMENDMENT NUMBER: FX 139246

### INFORMATION SCHEDULE

#### VEHICLE

| VIN | | | ☐ New (Untitled) | | ☐ Pre-Owned (Previously Titled) |
| --- | --- | --- | --- | --- | --- |
| Make | Model | | Trim Level | Year | Odometer |

#### CUSTOMER

| Name | | Street | | | |
| --- | --- | --- | --- | --- | --- |
| City | | State | Zip Code | Telephone | |

#### DEALER

| Dealer # | Name | | Street | | |
| --- | --- | --- | --- | --- | --- |
| City | | State | Zip Code | Telephone | |

#### LIENHOLDER

| Name | | Telephone | |
| --- | --- | --- | --- |

### Contract Information and GAP Charge

Type of Contract: ☐ Retail Installment Sales Contract (Conventional Loan)   ☐ Retail Installment Sales Contract (Other Loan – Deferred, Balloon, etc.)   ☐ Lease

Date of Contract: _____   Date of First Payment: _____   A.P.R.: _____

Amount Financed or Capitalized Cost: $ _____   Balloon Amount or Residual Value: $ _____   Total of Payments: $ _____ (May not exceed $100,000 including Balloon Amount or Residual Value)

Contract Term: (Retail Installment Sales Contract Term may not exceed 84 Months) (Lease Term may not exceed 60 Months)   GAP Charge: $ _____

### IMPORTANT INFORMATION REGARDING OPTIONAL GAP. PLEASE READ.

#### I. KEY INFORMATION

1. **You** might not need GAP depending on how much of a down payment (including trade-in value) **You** made on **Your Vehicle**, the term of **Your** Contract, the make of **Vehicle** and other considerations.
2. **You** may purchase GAP only at the time **You** sign **Your** Contract to purchase or lease the **Vehicle** from the Dealer.
3. GAP Charge is not regulated by any governmental entity. It is **Your** responsibility to determine whether the cost for GAP is reasonable in relation to the protections it affords **You** and **Your** family. **You** may also wish to consult an insurance agent to determine whether alternative programs or products are available and at what cost.
4. In cases of **Transfer of Equity** (See Section III - DEFINITIONS), GAP is transferable.
5. GAP coverage may decrease over the term of the Contract.
6. GAP coverage terminates if **You** prepay or refinance the Contract to which this Amendment refers. **You** are entitled to a refund of the GAP Charge, as outlined in the CANCELLATION PROVISIONS, as of the date of the prepayment or refinance.
7. GAP coverage terminates upon the expiration of any redemption period following the repossession or surrender of **Your Vehicle**.
8. **You** are not required to purchase GAP to obtain credit or financing. Neither the extension of credit, the terms of credit, nor the terms of the related motor vehicle sale or lease, may be conditioned upon the purchase of GAP. It is completely voluntary and optional.
9. GAP is not a substitute for nor does it provide any insurance coverage for **You** or the **Vehicle**, such as collision, comprehensive, bodily injury, property damage or liability.
10. Extensions, Holiday or Deferred Payments, which are not part of the scheduled Contract payments, are considered late payments.
11. GAP does not provide any benefit for lost cash down payment, trade equity or finance charges after the **Date of Loss**.
12. There is no GAP payment in the event that there is no **Deficiency Balance**.

#### II. GAP CONTRACT AMENDMENT

If **You** purchase optional GAP and pay the GAP Charge shown above, **Your** Contract with the Dealer is amended by adding the following and subject to the provisions on the following page:

"If the Insurance Company providing physical damage coverage on the **Vehicle** described above determines that the **Vehicle** is a **Total Loss**, then **You** will be responsible for paying only the following to the **Lienholder You** make payments to under the Contract:

1. A) The **Value of the Vehicle** as determined by the physical damage insurance company on the **Date of Loss** plus any physical damage insurance deductible over $1,000 which reduces that settlement, or
   B) If there is no physical damage insurance in effect on the **Date of Loss**, the average retail price of the **Vehicle** on the **Date of Loss** based on a current edition of the NADA Used Vehicle Price Guide.
   **You** will also be responsible for any early termination fees, late or deferred payments and charges, finance charges after the **Date of Loss** and refundable portions of any cancelable add-ons such as service contracts, credit life insurance or pre-paid maintenance agreements.
2. In addition to the above, **You** will be responsible for any portion of a **Deficiency Balance** that results from the **Amount Financed** or **Capitalized Cost** that exceeded 150% of the **Retail Value** of the **Vehicle**.

#### CANCELLATION PROVISIONS

To cancel GAP at any time, or in the event of the early termination of **Your** loan with the Lienholder, **You** must provide written notice of this cancellation or early termination of **Your** loan to the Administrator, **Us** or the Lienholder within ninety (90) days after **Your** decision to cancel or the occurrence of the event causing the early termination of loan. If **You** notify the Administrator, **Us** or the Lienholder within thirty (30) days of the Date of Contract, a full refund of the GAP Charge will be made. After thirty (30) days, the refund will be calculated on a pro-rata basis. Any refund will be sent to **Your** Lienholder. Under no circumstances will this Amendment be reinstated after a cancellation has been processed. In the event of a covered Total Loss, the GAP Charge will be considered fully earned and no refund will be available. This Contract Amendment includes all provisions on this, as well as, the following page and is binding on any **Lienholder**."

By signing below, I, the Customer acknowledge that I have requested GAP coverage, read all sections of this Contract Amendment including the provisions on the following page, received a copy of it, understand it and agree to pay the GAP Charge stated above.

I acknowledge:
1. GAP is optional and I am not required to buy it.
2. GAP does not provide any insurance coverage.
3. I must have physical damage insurance on my **Vehicle** on the **Date of Contract** for GAP to be effective.

Customer: _____

By signing below, the Dealer acknowledges that all sections of this Amendment have been reviewed with the Customer.

Dealer: _____

Date: _____

**Administrator:**
Automotive Warranty Services, Inc.
P.O. Box 802747
Chicago, Illinois 60680-2747

# OPTIONAL GUARANTEED ASSET PROTECTION (GAP)     CONTRACT AMENDMENT

THIS IS AN AMENDMENT TO THE RETAIL INSTALLMENT SALES CONTRACT OR LEASE CONTRACT (REFERRED TO AS THE "CONTRACT") BETWEEN THE DEALER AND **YOU**, THE CUSTOMER, LISTED BELOW AND COVERS ONLY THE ORIGINAL CONTRACT FOR THE PURCHASE/LEASE OF THE **VEHICLE**.

## AMENDMENT NUMBER: ZX 713892

## INFORMATION SCHEDULE

### VEHICLE

| VIN | | | New (Untitled) | Pre-Owned (Previously Titled) |
|-----|-----|-----|-----|-----|
| 2T3WFREV1EW102895 | | XX | | |

| Make | Model | Trim Level | Year | Odometer |
|------|-------|-----------|------|----------|
| TOYOTA RAV4   2014 | | | | |

### CUSTOMER

| Name | Street |
|------|--------|
| MARIAN J MENSIE | 703 WEST 16TH |

| City | State | Zip Code | Telephone |
|------|-------|----------|-----------|
| NORTH LITTLE ROCK AR 72114 | | | (501)519-5755 |

### DEALER

| Dealer # | Name | Street |
|----------|------|--------|
| F1035 | LANDERS TOYOTA | 10825 COLONEL GLENN RD |

| City | State | Zip Code | Telephone |
|------|-------|----------|-----------|
| LITTLE ROCK AR 72204 | | | (501)558-0242 |

### LIENHOLDER

| Name | Telephone |
|------|-----------|
| TOYOTA MOTOR CREDIT CORPORATION PO BOX 105386 ATLANTA 30348 | (800)553-8839 |

## Contract Information and GAP Charge

Type of Contract:  XX  Retail Installment Sales Contract (Conventional Loan)    Retail Installment Sales Contract (Other Loan – Deferred, Balloon, etc.)    Lease

Date of Contract: 06/28/2014     Date of First Payment 07/28/2014     A.P.R.: 4.35

Amount Financed or Capitalized Cost: $ 41911.90     Balloon Amount or Residual Value: $ _____ N/A     Total of Payments: $ 48691.44
(May not exceed $100,000 including Balloon Amount or Residual Value)

Contract Term: 84
(Retail Installment Sales Contract Term may not exceed 84 Months)
(Lease Term may not exceed 60 Months)     GAP Charge: $ 695.00

## IMPORTANT INFORMATION REGARDING OPTIONAL GAP. PLEASE READ.

### I. KEY INFORMATION

1. **You** might not need GAP depending on how much of a down payment (including trade-in value) **You** made on **Your Vehicle**, the term of **Your Contract**, the make of **Vehicle** and other considerations.
2. **You** may purchase GAP only at the time **You** sign **Your Contract** to purchase or lease the **Vehicle** from the Dealer.
3. GAP Charge is not regulated by any governmental entity. It is **Your** responsibility to determine whether the cost for GAP is reasonable in relation to the protections it affords **You** and **Your** family. **You** may also wish to consult an insurance agent to determine whether alternative programs or products are available and at what cost.
4. In cases of **Transfer of Equity** (See Section III - DEFINITIONS), GAP is transferable.
5. GAP coverage may decrease over the term of the Contract.
6. GAP coverage terminates if **You** prepay or refinance the Contract to which this Amendment refers. **You** are entitled to a refund of the GAP Charge, as outlined in the CANCELLATION PROVISIONS, as of the date of the prepayment or refinance.
7. GAP coverage terminates upon the expiration of any redemption period following the repossession or surrender of **Your Vehicle**.
8. **You** are not required to purchase GAP to obtain credit or financing. Neither the extension of credit, the terms of credit, nor the terms of the related motor vehicle sale or lease, may be conditioned upon the purchase of GAP. It is completely voluntary and optional.
9. GAP is not a substitute for nor does it provide any insurance coverage for **You** or the **Vehicle**, such as collision, comprehensive, bodily injury, property damage or liability.
10. Extensions, Holiday or Deferred Payments, which are not part of the scheduled Contract payments, are considered late payments.
11. GAP does not provide any benefit for lost cash down payment, trade equity or finance charges after the **Date of Loss**.
12. There is no GAP payment in the event that there is no **Deficiency Balance**.

### II. GAP CONTRACT AMENDMENT

If **You** purchase optional GAP and pay the GAP Charge shown above, **Your** Contract with the Dealer is amended by adding the following and subject to the provisions on the following page:

"If the Insurance Company providing physical damage coverage on the **Vehicle** described above determines that the **Vehicle** is a **Total Loss**, then **You** will be responsible for paying only the following to the **Lienholder You** make payments to under the Contract:

1. A) The **Value of the Vehicle** as determined by the physical damage insurance company on the **Date of Loss** or the NADA Retail Value of the **Vehicle**, whichever is greater, plus any physical damage insurance deductible over $1,000 which reduces that settlement, or
   B) If there is no physical damage insurance in effect on the **Date of Loss**, the average retail price of the **Vehicle** on the **Date of Loss** based on a current edition of the NADA Used Vehicle Price Guide, [illegible text] **You** will also be responsible for any early termination fees, late or deferred payments and charges, finance charges after the **Date of Loss** and refundable portions of any cancelable add-ons such as service contracts, credit life insurance or pre-paid maintenance agreements.
2. In addition to the above, **You** will be responsible for any portion of a **Deficiency Balance** that results from the **Amount Financed or Capitalized Cost** that exceeded 150% of the **Retail Value of the Vehicle**. [illegible]

### CANCELLATION PROVISIONS

To cancel GAP at any time, or in the event of the early termination of **Your** loan with the **Lienholder You** must provide written notice of this cancellation or early termination

### III. DEFINITIONS

**Administrator** means Automotive Warranty Services, Inc., P.O. Box 802747, Chicago, Illinois, 60680-2747, (877) 394-1206, www.mrclaims.net.

**Amount Financed** means the total "amount financed" in the original retail installment sales contract.

**Balloon Amount or Residual Value** means the amount payable as a lump sum at the termination of the original retail installment sales contract or lease contract.

**Capitalized Cost** means the total "adjusted capitalized cost" in the original lease contract.

**Date of Contract** means the date **You** sign the Contract to purchase or lease **Your Vehicle** and the effective date of coverage as indicated within the INFORMATION SCHEDULE.

**Date of Loss** means the date on which **Your Vehicle** is reported stolen or incurs physical damage that is severe enough to constitute a **Total Loss**.

**Deficiency Balance** means the amount obtained by subtracting the **Value of the Vehicle** (less **Your** physical damage insurance deductible up to $1,000 if applicable), from the amount **You** owe **Your Lienholder** based on the early termination provisions of **Your Contract** due to the **Total Loss** of **Your Vehicle**.

**Lienholder** means any entity that purchases or accepts assignment of the original Contract. **Lienholder** does not include an entity that pays-off the original Contract.

**Retail Value** means Manufacturer's Suggested Retail Price for new **Vehicles** and the NADA Retail Value for pre-owned **Vehicles** as of the **Date of Contract**.

**Total Loss** means because of theft of or accidental damage to **Your Vehicle**, one of the following occurs:

1) **Your Vehicle** is declared a **Total Loss**, or is declared stolen and not recovered within thirty (30) days of the date of the theft, by **Your** physical damage insurance carrier, or
2) no physical damage insurance is in force and **Your Vehicle** is stolen and not recovered within thirty (30) days of the date of the theft, or
3) no physical damage insurance is in force and the total cost to repair **Your Vehicle** as a result of an accident is greater than or equal to its cash value immediately before the accident as determined by the NADA Used Vehicle Price Guide as of the **Date of Loss**.

**Transfer of Equity** means that **You** are selling **Your Vehicle** to a person who assumes the obligation to pay payments to the **Lienholder** who purchases or accepts assignment of the original Contract. **Transfer of Equity** does not apply to refinancing.

**Value of the Vehicle** means the value on the **Date of Loss** as determined by the physical damage insurance carrier in the event of a **Total Loss** and does not include towing charges, rental fees, storage charges, administrative fees, salvage value or any prior damage deductions. If no physical damage insurance is in force on the **Date of Loss**, the **Value of the Vehicle** shall be determined using the current edition of the NADA Used Vehicle Price Guide.

**Vehicle** means the vehicle indicated within the INFORMATION SCHEDULE.

**We, Us and Our** mean the Dealer indicated within the INFORMATION SCHEDULE that provided the original financing for **Your Vehicle**, or any entity who subsequently purchases or accepts assignment of the original Contract.

**You** and **Your** mean the Customer indicated within the INFORMATION SCHEDULE who financed or leased the **Vehicle** or an individual to whom this Amendment is transferred in cases of **Transfer of Equity**.

### IV. ASSIGNMENT

**We** agree to assign any and all rights under this Amendment to any assignee of the Contract covered by this Amendment. All holders and assignees of this consumer credit transaction are subject to all claims and defenses, which **You** could assert against **Us** resulting from **Your** purchase of Guaranteed Asset Protection. The Assignee agrees, by acceptance of the Amendment to the Contract by assignment, to waive **Your** liability covered by this Amendment.

### V. EXCLUSIONS

This Amendment does not apply:

1. If the **Vehicle** to which this Amendment refers is refinanced.
2. When the **Date of Loss** occurs prior to the **Date of Contract** or after the original Contract term.
3. When the **Date of Loss** occurs during or after repossession or confiscation of **Your Vehicle**.
4. To any loss arising from fraud, material misrepresentation of fact or falsification of documents by **You** or the **Lienholder**.
5. To theft or damage to **Your Vehicle** that does not constitute a **Total Loss**.
6. To any losses that occur outside the continental United States of America, Alaska, Hawaii and Canada.
7. To any single pay retail installment sales contract or other Contract for which scheduled payments are made less frequently than once every two (2) months from the point when the first scheduled payment is due.
8. To any retail installment sales contract with a term greater than 84 months or lease contract with a term greater than 60 months.
9. To any Contract with a Total of Payments exceeding $100,000, including the **Balloon Amount or Residual Value**.
10. To **Vehicles** used for carrying goods or passengers for compensation, municipal or military vehicles or any truck or van weighing over 12,500 lbs. G.V.W.R. This does not include share the expense car pools.
11. To any **Total Loss** to **Your Vehicle** resulting from **You** being under the influence of alcohol or drugs as established by the police report, breathalyzer test or an official blood test.

### VI. LIMIT OF LIABILITY

**Our** limit of liability under this Amendment shall be as stated on the front of this form under Section II. GAP CONTRACT AMENDMENT.

### VII. NOTIFICATION OF LOSS

What **You** must do if **Your Vehicle** is declared a **Total Loss**:

Within ninety (90) days after **Your Vehicle** is stolen or declared a **Total Loss**, or within ninety (90) days after receiving **Your** insurance company's settlement or within ninety (90) days from the date the **Lienholder** notifies **You** of any **Deficiency Balance** owing, whichever happens later, **You** must send the **Administrator** named in Section III. DEFINITIONS, the following information:

1. A copy of **Your** insurance company's settlement with **You** showing all additions and deductions for the settlement amount and a copy of **Your** insurance company's check. If **You** do not have physical damage insurance, a copy of the police theft or accident report that identifies **Your Vehicle** by its vehicle identification number (VIN) must be submitted.
2. A copy of this GAP Amendment.
3. An entire copy, front and back, of the original Contract.
4. A copy of **Your** insurance company's Declaration Page, listing the coverage, deductible and agent's phone number.
5. The name and address of the **Lienholder** and **Your** account number with the **Lienholder**.
6. The pay-off balance of **Your** Contract as calculated by the **Lienholder** at the **Date of Loss**.
7. A history of **Your** Contract showing all payments made, late charges and fees.
8. A copy of refund checks and/or authorized cancellation forms confirming the refund amount for any credit insurance, mechanical repair coverage or other similar products that were purchased and included in the financing or lease of the **Covered Vehicle**. (Contact the Dealer that sold **You** the coverage.)
9. For new **Vehicles** only, if available, a copy of the window sticker or **Vehicle** invoice showing the Manufacturer's Suggested Retail Price. (Contact the Dealer that sold or leased **You** the **Vehicle**.)

If it is impossible to file proof of loss within such ninety (90) day period, proof must be filed as soon as possible, but in no event later than one year from the date proof was due as indicated above.

### VIII. LENDER REQUIREMENTS

If **Your Vehicle** is financed with Toyota Motor Credit Corporation (TMCC), Section V. EXCLUSION #10 is deleted in its entirety and replaced by the following: To **Vehicles** used for competitive driving, taxi or livery, snowplowing, or used for hire to the public or used to transport people for hire, to **Vehicles** used for municipal or professional emergency or police services or to **Vehicles** used to tow a trailer whose weight exceeds the manufacturer's recommendations for that vehicle.

**TO REGISTER YOUR GAP CONTRACT FOR SELF-SERVICE, VISIT US AT:**
– www.mrclaims.net

PO Box 802747
Chicago, IL 60680-2747
Toll-Free: 877-394-1206

# Automotive Warranty Services, Inc.
## Total Loss Department



EXHIBIT
5

### EXPLANATION OF PAYMENT
### GAP CLAIM

## CUSTOMER DATA

| | | | | |
|---|---|---|---|---|
| 1. Customer's Name | | | | MARIAN MENSIE |
| 2. Loan Account Number | | | | 023-6368873 |
| 3. Contract Number | | | | ZX713892 |
| 4. Vehicle-(Year,Make and Model) | | 2014 | Toyota | RAV4 |
| 5. Odometer Reading: | At Purchase: | 0 | At Loss: | 24,693 |
| 6. Vehicle Identification Number | | | | 2T3WFREV1EW102895 |
| 7. Purchase Date | | | | 6/28/2014 |
| 8. First Payment Due Date | | | | 7/28/2014 |
| 9. Loss Type/Date of Loss | Type: | COLLISION | | 4/25/2015 |
| 10. Last Scheduled Payment Before Date of Loss | | | | 3/28/2015 |
| 11. Number of Days to Date of Loss | | | | 28 |

## LOAN TERMS

| | | | | |
|---|---|---|---|---|
| Financed Amount | | | | $41,911.90 |
| Finance Charge | | 4.35% | | $6,779.54 |
| Total of Payments | | | | $48,691.44 |
| Payment Schedule | Term: | 84 Month | Payment: | $579.66 |

## MAXIMUM ALLOWED AMOUNT FINANCED

| | | |
|---|---|---|
| Retail Value at Purchase(NADA Official Used Car Guide) | | $26,235.00 |
| Percentage Limit(Per Contract Amendment) | 50.00 % | $13,117.50 |
| Maximum Allowed Amount Financed | | $39,352.50 |

## BUYER/LESSEE RESPONSIBILITY

| | |
|---|---|
| Amount Financed | $41,911.90 |
| Less Maximum Allowed Amount Financed | $39,352.50 |
| Buyer/Lessee Responsibilty at Date of Sale | $2,559.40 |

## GAP BENEFIT CALCULATION

| | |
|---|---|
| Contractual Pay-off Balance at Date of Loss (See Comments 1-3) | $38,129.79 |
| Less Insurance Settlement | $24,431.45 |
| Less Mechanical Repair Agreement Fee(Dealer's Refund Amt) | $2,197.10 |
| Less Prepaid Maintenance Agreement(Dealer's Refund Amt) | $1,175.34 |
| GAP Benefit Calculation | $10,325.90 |

## PAYMENT TYPE

| | Initial Payment |
|---|---|
| GAP BENEFIT CALCULATION | $10,325.90 |
| Less Buyer/Lessee Responsibility at Date of Loss (See Comment 4) | $2,328.42 |
| GAP Benefit Payable | $7,997.48 |

## CLAIM COMMENTS

1. The pay-off balance is based on 9 scheduled payments, having been made on time (as required by the finance contract) by the Date of Loss.
2. Interest from the Date of Loss to the present is not covered.
3. Any late fees and/or interest resulting from late or missed payments are not covered.
4. The customer is responsible for any portion of the deficiency balance that results from the amount financed that exceeded 150% of the Retail Value of the vehicle. The Buyer/Lessee Responsibility at Date of Sale $2559.40 has been amortized ( $2328.42 ) to reflect the amortizing loan balance (which represents 0.9098% of the Amount Financed).
5. The GAP Payment will be mailed to the Lien Holder.

Date:   4/28/16

# Important Questions and Answers

**To help you better understand your GAP benefit, we have prepared answers to the most frequently asked Questions:**

1. **When will I receive credit for the GAP Payment on my loan?** We mailed a check to your lender in the amount of the GAP Benefit Payable on the same date we mailed the enclosed Explanation of Payment to you. You should allow 10-working days for the credit to appear on your loan account.

2. **Why was the GAP Benefit less than the pay-off balance calculated by the creditor?** The GAP payment was calculated based on the number of contractual payments that should have been made prior to the date of loss. In other words, our calculation of the pay-off balance assumes that all payments have been made and that each has been paid on time. This is what is meant by the term "Contractual Pay-off Balance at Date of Loss" on the enclosed Explanation of Payment. Be advised that the GAP Amendment specifically excludes any late payments and charges.

3. **Why did you deduct for Credit Insurance and Mechanical Repair that was included in my loan?** Credit Life, Credit Disability and Mechanical Repair charges are refundable. In other words, these are charges that are used-up by the passage of time. You are entitled to a refund of the unused (unearned) portion of the original charge. To obtain this refund, you will need to contact the dealer or credit union that sold you the coverage. They will prepare the paperwork needed for the refund and will submit the refund to your lender for credit to your loan account.

   To receive credit for the used (earned) portion of these charges, you must submit a copy of the refund document for each coverage. We consider a copy of the refund check, a cancellation form or a statement showing the refund calculation on the seller's letterhead as acceptable documentation. We reserve the right to verify the accuracy of any refund. Upon receipt of the refund document, we will review your claim and, if appropriate, make a supplementary payment to the lender.

   Send the required documentation to the GAP Claims Department, Automotive Warranty Service, Inc., P.O. Box 802747, Chicago, Illinois 60680-2747.

4. **Why didn't you pay interest after the Date of Loss?** Your GAP contract amended your loan contract so that in the event of a total loss, your lender agreed to accept your physical damage insurer's settlement, as of the Date of Loss, as full settlement of your loan account. Your GAP contract pays any resulting termination deficiency with the exception of:
   - Deductible over a specified amount
   - Late payments and/or charges
   - Refundable portions of any cancelable contracts that were included in your loan (such as mechanical repair, credit life insurance or prepaid maintenance)
   - Interest occurring after the Date of Loss

   However, we did pay the interest due from the date of your last contractually due payment to the date your vehicle became a total loss.

# Customer/Lessee Responsibility Explanation

**To help you better understand your GAP benefit, we have prepared answers to the most frequently ask questions:**

1. **Why was my GAP benefit paid based on the Customer/Lessee Responsibility provision?**
   Your contract states the following: "In addition to the above, You will be responsibile for any portion of a **Deficiency Balance** that results from the Amount Financed that exceeded 150% of the **Retail Value** of the **Vehicle**." This provision limits the amount of negative equity that can be included in the loan covered by the Contract Amendment.

   The limit is determined by multiplying the vehicle's retail value on the date of purchase by 50% and adding the resulting amount to the Amount Financed to establish a "Maximum Allowed Amount Financed." When the Amount Financed exceeds the "Maximum Allowed Amount Financed" you are responsible for the difference (which is referred to the "**Buyer/Lessee Responsibility**" on the attached Explanation of Payment).

2. **How did you determine the Retail Value of my vehicle on the date of purchase?** Retail value is determined as follows:
   - New Vehicles: Manufacturer Suggested Retail Price less any rebates.
   - Used Vehicles: NADA Retail Book Price <u>as of the date of purchase</u> (See note below)

   NOTE: We understand that the price you paid for the vehicle may be substantially greater than the NADA Retail Book Price. The price the dealer asks for the vehicle is based on the dealer's judgment of the market and may be greater or less than the NADA Retail Book Value. In some cases, the dealer will adjust the selling price to allow you to refinance negative equity on the vehicle you are trading. The Contract Amendment specifically provides that the retail price is based on the NCDA Retail Book Value as is a nationally accepted standard for determining the retail value of a used vehicle.